UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JETHRO RENE POWERS,<br><br>    Defendant. | Case No. 14-cr-20449<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING MOTION FOR
COMPASSIONATE RELEASE [159]**

Even though Jethro Powers has served only a little more than one-third of his 120-month sentence for cocaine distribution, he wants to be released now because of the coronavirus pandemic. Although he is only 48 years old, he claims he is particularly vulnerable to COVID-19 because his height and weight categorize him as obese[1] and because he is currently housed at the Federal Correctional Institution Elkton, a facility which previously had a serious outbreak. Indeed, Powers was one of the Elkton inmates who contracted COVID-19; fortunately, even with his obesity and potential high blood pressure, he was asymptomatic.

The Court is not convinced that Powers is at such an elevated risk of severe harm from the virus as to constitute extraordinary and compelling reasons to justify his early release.

---

[1] Powers' motion makes a reference to his childhood asthma, but the medical records do not indicate this is a condition he is presently battling. A prison medical record filed following the briefing on the motion shows that Powers had some high blood pressure readings on August 7, 2020, which will be discussed later in the opinion.

## I.

Powers was arrested and charged for his role in a cocaine distribution ring. (ECF No. 132, PageID.738.) In a superseding indictment, Powers was charged with conspiracy to possess with intent to distribute and distribute a controlled substance, namely at least 5 kilograms of a mixture containing cocaine, and felon in possession of a firearm. (ECF No. 37.) Powers ultimately pleaded guilty to the drug charge. (ECF No. 78.) After considering all of the sentencing factors under 18 U.S.C. § 3553(a), this Court sentenced Powers to 10 years' imprisonment, the statutory mandatory minimum, but below his guidelines range. (ECF No. 108; ECF No. 78, PageID.264, 266.) Powers is scheduled to be released on February 12, 2025 and has served approximately one-third of his sentence. *See Find an Inmate*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited August 19, 2020).

Powers, who is 48 years old and currently incarcerated at FCI Elkton (ECF No. 159, PageID.934), is now seeking a sentence reduction under 18 U.S.C. § 3582. He is worried about being infected with the highly contagious COVID-19. The virus causes a respiratory disease that can result in serious illness or death. The Centers for Disease Control and Prevention (CDC) have identified persons with certain medical conditions, regardless of age, as being at increased risk for severe illness from COVID-19, including those with obesity, defined as having a BMI of 30 or higher. *See People of Any Age with Underlying Medical Conditions*, Centers for Disease Control and Prevention, https://perma.cc/7BQG-Z2R3.

In his original motion, Powers focused almost exclusively on his obesity. And he based his argument on his height and weight from his 2016 presentence report. (ECF No. 159, PageID.938.) Powers' prison medical records originally filed by the government did not reveal any significant health issues. Nor did they contain any mention of Powers' current weight. (ECF No. 162; ECF

2

No. 163.) On the Court's request for this updated information, both parties filed supplements. The government provided additional medical records, none of which included Powers' current weight. (ECF No. 165; ECF No. 166.) Powers' first supplemental brief stated that he weighed 305 pounds on August 7, 2020. (ECF No. 167.) In a supplemental brief filed after the August 21, 2020, hearing on the motion, Powers provided medical records confirming that weight. (ECF No. 170-1, PageID.1171.)

At 5 feet 9 inches tall and 305 pounds, Powers has a BMI of 45 and is considered obese. (ECF No. 159, PageID.938; ECF No. 167.) *See Adult BMI Calculator*, Centers for Disease Control and Prevention, https://perma.cc/WWK6-ECWT**.**

The supplemental medical records filed by the government also reveal that Powers twice tested positive for COVID-19 (on June 24 and July 7), but it appears he never had any symptoms. (ECF No. 166, PageID.1114, 1134, 1138.) And his counsel acknowledged his positive diagnosis at the hearing. His temperature was checked daily and his counsel believes he was quarantined. On July 23, 2020, Powers tested negative. (ECF No. 166, PageID.1130.) So all indications suggest that Elkton sought to follow proper procedures by isolating Powers and continuing to monitor and test him until got a negative result.

Powers' second supplemental brief also alleges that he was diagnosed with hypertension on August 7, 2020, based on high blood pressure readings during his appointment. (ECF No. 170; ECF No. 170-1, PageID.1168.) Apparently, Powers has begun taking medication to control his blood pressure. (ECF No. 170-1, PageID.1168.) The CDC states that people with hypertension "might be at an increased risk for severe illness from COVID-19." *See People of Any Age with Underlying Medical Conditions*, *supra*.

The CDC has also issued guidance acknowledging that detention facilities "present . . . unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control and Prevention, https://perma.cc/W3JW-4UQX20. These include "low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing)." *United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020). As the Sixth Circuit has summarized, the "COVID-19 virus is extremely contagious and conditions favor its more rapid transition in detention or correctional facilities." *United States v. You*, No. 20-5390, 2020 WL 3867419, at *1 (6th Cir. Apr. 22, 2020) (order).

FCI Elkton was previously the site of a particularly bad outbreak: 978 inmates at the facility have tested positive since the start of the pandemic and nine have died. *See COVID-19*, Bureau of Prisons, https://perma.cc/9Q7Z-PVE7. Although a district court in Ohio ordered Elkton to take further measures to control the outbreak and to release the most vulnerable inmates on April 22, 2020, *see Wilson v. Williams*, No. 4:20-00794, 2020 WL 1940882 (N.D. Ohio Apr. 22, 2020), the Sixth Circuit has since vacated the preliminary injunction, *see Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020). The Sixth Circuit concluded that as of April 22, 2020, the BOP had "responded reasonably to the known, serious risks posed by COVID-19." *Wilson*, 961 F.3d at 840. A declaration by the executive assistant/acting associate warden at Elkton, Andrea Burnside, filed in the *Wilson* case details the methods Elkton staff are using to combat COVID-19 in the facility. *See United States v. Brant*, No. 18-20155, 2020 WL 3605282, at *4 (E.D. Mich. July 2, 2020).

4

Prisoners who test positive are being isolated for at least 14 days, and Elkton is also quarantining for 14 days any asymptomatic person who may have been exposed to the virus. *Id.* at *9. The measures Elkton has been taking appear to have made some progress, although there continue to be positive cases. According to the BOP website and government counsel, as of August 20, 2020, there are currently two active prisoner cases and two active staff cases at FCI Elkton. *See COVID-19*, Bureau of Prisons, https://perma.cc/9Q7Z-PVE7.

Powers argues that he should be granted compassionate release because he believes his obesity and, now, hypertension put him at great risk of becoming seriously ill if he were to contract COVID-19. (ECF No. 159, PageID.943.) In its response brief, the government argues that Powers had not provided evidence showing that he has a condition that places him at high risk from COVID-19. (ECF No. 162, PageID.1028.) And the government now argues that the updated medical records showing he contracted COVID-19 and was asymptomatic further undermine Powers' claim that he is at heightened risk. (ECF No. 165, PageID.1107.)

## II.

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). As amended by the First Step Act, and upon exhaustion of administrative remedies or the lapse of 30 days from the receipt by the warden of a request for compassionate release, 18 U.S.C. § 3852(c)(1)(A)(i) allows a court to reduce an inmate's sentence if the court finds that (1) "extraordinary and compelling reasons" warrant a reduction, (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors under § 3553(a) warrant a reduction.

**A.**

The statutory exhaustion requirement is mandatory. *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Powers submitted a request to the warden for compassionate release on April 21, 2020. (ECF No. 159-2, PageID.950.) The Government does not contest Powers' exhaustion of administrative remedies. (ECF No. 162, PageID.1046.) Because 30 days have passed since Powers submitted his compassionate release request, he has satisfied the exhaustion requirement. S*ee Alam*, 960 F.3d at 832.

**B.**

Powers must also demonstrate "extraordinary and compelling reasons" to justify his early release.

Congress has not further defined "extraordinary and compelling." But the commentary to U.S.S.G. § 1B1.13, adopted before the enactment of the First Step Act, does. Application Note 1 identifies the following "extraordinary and compelling" circumstances: (A) terminal illness diagnoses or serious medical, physical, or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) family related circumstances. U.S.S.G. § 1B1.13 cmt n.1(A)-(C). Then there is a catch-all in section (D), titled "Other Reasons." That section provides that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt n.1(D).

District courts across the country have grappled with whether they can find extraordinary and compelling reasons for compassionate release under subdivision (D) given the prefatory

language that suggests the issue is to be determined by the "Director of the Bureau of Prisons." But as another court in this Circuit has explained, the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, "is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." *United States v. Young*, No. 00-cr-00002, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020). And "[a]lthough it does not appear that any federal circuit court of appeals has addressed this issue, a majority of the district courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons." *Id*.

Courts have found that the novel coronavirus combined with other factors can satisfy the catch-all provision. *See, e.g.*, *Loyd v. United States*, No. 15-20394-1, 2020 WL 2572275, at *2 (E.D. Mich. May 21, 2020) *United States v. Pomante*, No. 19-20316, 2020 WL 2513095, at *6 (E.D. Mich. May 15, 2020); *United States v. Oliver*, No. 17-20489, 2020 WL 2768852, at *6 (E.D. Mich. May 28, 2020); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020). As another court in this district explained, "[t]he common features of the recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic are . . . properly exhausted claims that unreasonably were refused despite the existence of severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic" or "where the defendants had severe medical conditions which placed them at high risk of coronavirus infection, were housed at a facility with confirmed cases, and had served a large majority of their sentences." *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020).

Speculative concern about catching COVID is not enough. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020) ("[A] generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission"); *United States v. Smoot*, No. 19-00020, 2020 WL 1501810, at *3 (S.D. Ohio Mar. 30, 2020) ("The mere possibility of an outbreak at his facility does not equate to a compelling enough reason to justify [the defendant's] release.").

Here, Powers has not demonstrated "extraordinary and compelling reasons" to justify his early release.

It is true that the CDC has identified people with obesity as being at increased risk for severe illness from COVID-19. And a recent study found that "severe obesity puts those with coronavirus disease 2019 (COVID-19) at particularly high risk of death, more so than related risk factors such as diabetes or hypertension." *See* Mary Caffrey, *Kaiser Study: Severe Obesity Boosts Risk of COVID-19 Death, Especially for the Young*, Am. J. of Managed Care (Aug. 12, 2020), https://perma.cc/YN3B-33ZS.

The CDC also identifies hypertension as a potential risk factor for severe illness from COVID-19. But Powers was diagnosed with hypertension after high blood pressure readings at a single doctor visit a few weeks ago. Hypertension is typically diagnosed only after consistently high blood pressure readings on multiple occasions. *See High Blood Pressure*, National Institute of Health, National Heart, Lung, and Blood Institute, https://perma.cc/G5SQ-4QG8. "This is

8

because blood pressure normally varies throughout the day, and it may be elevated during visits to the doctor." *High blood pressure (hypertension)*, Mayo Clinic, https://perma.cc/8QPS-BANT. And Powers has been prescribed medication to help manage his blood pressure. (ECF No. 170-1, PageID.1168.)

Moreover, Powers already contracted COVID-19 and was asymptomatic for the entire period he tested positive. Medical science has not yet determined whether someone who tested positive for COVID-19 can be re-infected. *See, e.g.*, *Clinical Questions about COVID-19: Questions and Answers*, Centers for Disease Control and Prevention, https://perma.cc/H7EE-6DQJ ("The immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood."). And the CDC does note that patients infected with other types of coronavirus "are unlikely to be re-infected shortly (e.g., 3 months or more) after they recover." *Id.* Also, recent studies "are now starting to see encouraging signs of strong, lasting immunity, even in people who developed only mild symptoms of Covid-19." Katherine J. Wu, *Scientists See Signs of Lasting Immunity to Covid-19, Even After Mild Infections*, N.Y. Times (Aug. 16, 2020), https://perma.cc/4EMG-R3SE. Although researchers have recently found evidence of a handful of cases of coronavirus reinfection, the science on reinfection is still very unclear. *See* Apoorva Mandavilli, *First Documented Coronavirus Reinfection Reported in Hong Kong*, N.Y. Times (Aug. 24, 2020), https://perma.cc/MT6M-SW5F; *Two more cases of reinfection were reported, this time in Europe*, N.Y. Times (Aug. 26, 2020), https://perma.cc/N3X7-HSHZ; Apoorva Mandavilli, *Can You Get Covid-19 Again? It's Very Unlikely, Experts Say*, N.Y. Times (July 22, 2020), https://perma.cc/2S5E-7NDW. None of this information can predict whether Powers may be re-infected or how the disease would manifest if he was. But it is also too speculative to support a finding of extraordinary and compelling reasons. Under similar circumstances, two other courts

in this district have recently held that "[t]he risk of contracting COVID-19 a second time and potentially developing a more severe response is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission." *United States v. Bland*, No. 18-20555, 2020 U.S. Dist. LEXIS 135481, at *4 (E.D. Mich. May 28, 2020); *United States v. Buford*, No. 05-80955, 2020 WL 4040705, at *5 (E.D. Mich. July 17, 2020).

Although some judges in this district have granted compassionate release to defendants who suffered from obesity alongside other conditions known to exacerbate the risk of substantial injury or death from COVID-19, it is premature to determine whether Powers' blood pressure puts him at increased risk. And the Court is not aware of any case in this district in which a defendant was released solely because of obesity. *See, e.g.*, *United States v. Knight*, No. 15-20283, 2020 WL 3055987 (E.D. Mich. June 9, 2020) (denying compassionate release for severely obese defendant with no other listed conditions); *United States v. Oliver*, No. 17-20489, 2020 WL 2768852 (E.D. Mich. May 28, 2020) (denying compassionate release to defendant with severe obesity and asthma); *United States v. Peaks*, No. 16-20460, 2020 WL 2214231 (E.D. Mich. May 7, 2020) (denying compassionate release for defendant with severe obesity and hypertension); *cf. United States v. White*, No. 13-20653-1, 2020 WL 2557077 (E.D. Mich. May 20, 2020) (granting compassionate release to obese defendant with hypertension who had served more than 80 percent of his sentence); *United States v. Readus*, No. 16-20827-1, 2020 WL 2572280 (E.D. Mich. May 21, 2020) (granting compassionate release to defendant with severe obesity, obstructive sleep apnea, hypertension, and prediabetes). The Court recognizes the seriousness of the coronavirus pandemic and its spread within the federal prisons. But compassionate release may only be granted when a defendant demonstrates "extraordinary and compelling reasons" to justify his early release.

Powers has not put forth compelling evidence to establish that his obesity puts him at so elevated a risk of harm as to justify his release.

## III.

Because Powers has not demonstrated extraordinary and compelling reasons to reduce his sentence to time served, the Court need not address his dangerousness or the 3553(a) factors. Powers' motion for compassionate release (ECF No. 159) is DENIED WITHOUT PREJUDICE. If Powers' high blood pressure is not successfully managed with medication and lifestyle changes and the medical community releases new, more concrete, information on the likelihood and consequences of reinfection, he may have a basis to file another motion for compassionate release.

SO ORDERED.

Dated: August 26, 2020

>
> s/Laurie J. Michelson
> LAURIE J. MICHELSON
> UNITED STATES DISTRICT JUDGE